# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| SHAUNICE PATTILLO, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:18-cv-01194-B |
| ARBOR E&T, LLC, d/b/a RESCARE WORKFORCE SERVICES, | § § § § | |
| Defendant. | § | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

**FEE, SMITH, SHARP & VITULLO, LLP**

**WILLIAM M. TOLES**
State Bar No. 00798550
wtoles@feesmith.com
**HOWARD J. KLATSKY**
State Bar No. 00786024
hklatsky@feesmith.com
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
(972) 934-9100
(972) 934-9200 [Fax]

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 9th day of October, 2018, I served a true and correct copy of the foregoing instrument has been mailed, telecopied or hand delivered to all attorneys of record in this cause of action as follows.

*Via E-filing & ~~Facsimile~~* certified mail
Lantis G. Roberts
The Law Office of Lantis G. Roberts, PLLC
1166 West Pioneer Parkway
Arlington, Texas 76013

_____
**HOWARD J. KLATSKY**

## TABLE OF AUTHORITIES

**CASES:**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................. 10

*Baeza v. Hector's Tire & Wrecker Serv.*,
    471 S.W.3d 585 (Tex. App. – El Paso 2015, no pet.) ............................. 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................. 10

*Chomburg v. TRW Vehicle Safety Sys., Inc.*,
    242 S.W.3d 911 (Tex. App. – Dallas 2008, pet. denied) ........................... 12

*Frost Nat'l Bank v. L&F Distributors, Ltd.*,
    165 S.W.3d 310 (Tex. 2005) ..................................................................... 12

*Hirston v. SMU*,
    441 S.W.3d 327 (Tex. App. – Dallas 2013, pet. denied) .......................... 10

*Honeycutt v. Billingsly*,
    992 S.W.2d 570 (Tex. App. – Houston [1st Dist.] 1999, pet. denied) ............. 10

*Jenkins v. Henry C. Beck Co.*,
    449 S.W.2d 454 (Tex. 1969) ..................................................................... 11

*Keck, Mahin & Cate v. National Union Fire Ins. Co.*,
    20 S.W.3d 692 (Tex. 2000) ....................................................................... 12

*Lavespere v. Niagra Mach. & Tool Work, Inc.*,
    910 F.2d 167 (5th Cir. 1990); ................................................................... 10

*Matsushita Elec. Indus. Co. v. Zena Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................. 10

*Scottsdale Ins. Co. v. Texas Sec. Concepts & Investigation*,
    173 F.3d 941 (5th Cir. 1999) ..................................................................... 13

*Stowers v. Harper*,
    376 S.W.2d 34 (Tex. App. – Tyler 1964, writ ref'd n.r.e.) ........................ 13

*TransAmerican Nat. Gas Corp. v. Finkelstein*,
    933 S.W.2d 591 (Tex. App. – San Antonio 1996, writ denied) ................. 10

*Ulico Cas. Co. v. Allied Pilots Ass'n,*
  262 S.W.3d 773 (Tex. 2008) .................................................................... 13

*Utica National Ins. Co. v. Am. Indem. Co.,*
  141 S.W.3d 198 (Tex. 2004) .................................................................... 12

*Victoria Bank & Trust Co. v. Brady,*
  811 S.W.2d 931 (Tex. 1991) .................................................................... 12

*Williams v. Colthurst,*
  253 S.W.3d 353 (Tex. App. – Eastland 2008, no pet.) ............................. 10

*Williams v. Glash,*
  789 S.W.2d 261 (Tex. 1990) .................................................................... 12

## STATUTES:

FRCP 56(a) ................................................................................................. 9

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Arbor E&T, LLC d/b/a Rescare Workforce Services ("Arbor E&T"), by and through its undersigned counsel, respectfully submits this Brief in support of its Motion for Summary Judgment. For the reasons set forth below, Arbor E&T requests that this Court enter Judgment in its favor and dismiss all of the Plaintiff's affirmative claims for relief with prejudice.

### I.

### SUMMARY

Plaintiff Shaunice Pattillo is seeking to prosecute the following affirmative claims for relief against her former employer Arbor E&T: retaliation in violation of Title XII of the Civil Rights Act of 1964, as Amended by the Pregnancy Discrimination Act of 1978, cat's paw liability, wrongful discharge, and constructive discharge. All of these claims arise out of certain *alleged* discriminatory conduct that two (2) (now former) female employees of Arbor E&T engaged in that, according to the Plaintiff, affected her ability to produce and express milk for her newborn child. The competent evidence presented herein conclusively demonstrates that the Plaintiff filed a Complaint (complaining about this same alleged wrongful conduct) with the United States Department of Labor years ago and agreed to amicably resolve and settle that dispute with Arbor E&T back in 2015. Accordingly, the affirmative claims for relief that the Plaintiff is now seeking to prosecute against Arbor E&T all fail, as a matter of law, under the doctrines of accord and satisfaction, release, and/or waiver.

### II.

### RELEVANT BACKGROUND FACTS

1. Plaintiff Shaunice Pattillo alleges that she was employed by Arbor E&T as a "Talent and Development Specialist – Youth" between May 10, 2012 and November 6, 2014. Appendix, page 4.

2. Plaintiff alleges that Arbor E&T created a hostile work environment, thereby forcing her to resign due to "extreme stress" that Arbor E&T *allegedly* inflicted upon her, thereby constituting a constructive discharge (that, according to the Plaintiff, affected her ability to produce and express milk for her child). Appendix, page 2.

3. Plaintiff alleges that Arbor E&T subjected her to discrimination because she was a woman who recently gave birth and had exercised her rights under the Fair Labor Standards Act ("FLSA") related to lactation. Appendix, page 2. She also alleges that she engaged in other protected activity. More specifically, Plaintiff alleges that after she filed a Complaint with the United States Department of Labor ("in opposition to the Defendant's failure to comply with federal law") she was retaliated against by being written up and disciplined, and that Arbor E&T was aware that she had filed a Complaint with the Department of Labor. Appendix, page 2.

4. Plaintiff alleges that in September 2013 she informed Arbor E&T that she was pregnant, and that she had received positive performance reviews – and had no disciplinary history – prior to this time. Appendix, page 4.

5. Plaintiff alleges that on or about October 28, 2013 – while she was pregnant – she stood in the door during a group huddle meeting when an employee of Arbor E&T named Eugenia Grissom "forcibly grabbed" her wrist and "tried to close the door at the same time". Appendix, page 4. Plaintiff alleges that she had had "prior bad experiences" with Grissom, but did not report them due to fear of retaliation. Appendix, page 4. Plaintiff alleges that she was concerned (at the time of this October 28, 2013 incident) "about the safety of her unborn child" and that she reported the incident to the Human Resources Department. Appendix, page 4. Plaintiff also alleges that she informed Human Resources that she felt threatened by Grissom and was uncomfortable with the work environment due to how she was being treated. Appendix, page 4. According to the Plaintiff, due to "continued hostility" she filed a complaint with Arbor E&T's Ethics Hotline, and Arbor E&T

"failed to take any corrective action". Appendix, page 4.

6. Plaintiff alleges that on or about September 25, 2014 she was recognized with the "2014 Summer WEX Outstanding Achievement Award" after returning to work from her FMLA leave (after giving birth to her daughter) on or about September 28, 2014. Appendix, pages 4-5. Plaintiff also alleges that shortly after her return to work a (now-former) employee of Arbor E&T named Courtney Cunningham began treating her differently "because of (her) sex and status as a breastfeeding mother". Appendix, page 5.

7. Plaintiff alleges that – beginning on or about October 13, 2014 – Cunningham required her to provide her with a schedule as to when she planned to express milk for her child, and that Cunningham required her to express her milk only during the two (2) fifteen (15) minute break periods and the one (1) hour lunch. Appendix, page 5. Plaintiff also alleges that Cunningham required her to increase her workload as to exceed the "usual monthly growth of other employees who held positions similar" to her, and that on October 29, 2014 Cunningham presented her with a Corrective Action Plan based "primarily on the unreasonable standards she set forth for Pattillo after her return from FMLA leave" (requiring Pattillo to increase her caseload from 38-46 cases to 60-80 cases by November 21, 2014), stating that this was "unreasonable when no other employee similarly situated with Pattillo was required to meet such a high standard". Appendix, page 5.

8. Plaintiff alleges that she was treated less favorably than another breastfeeding mother (named Shawna Berro), who "took breaks to express her milk whenever she desired". Appendix, page 6.

9. Back in 2014 Plaintiff Pattillo submitted a Complaint to the U.S. Department of Labor/Wage and Hour Division. Appendix, pages 2, 13-15, and 33-37. The Secretary of the Department, through an Investigator of the Department's Wage and Hour Division, conducted an investigation of this Complaint, which alleged "constructive discharge for engaging in activity

protected by Section 15(a)(3) of the Fair Labor Standards Act." Appendix, pages 13-15.

10. The above referenced Complaint is identified by the U.S. Department of Labor/Wage and Hour Division as "In the Matter of: Arbor E&T, LLC, d/b/a ResCare Workforce Services/Ms. Shaunice Pattillo 1745883, 2015– 167-16663." Appendix, pages 13-15.

11. In response to written discovery requests served upon her in this case, Pattillo has admitted that:

    a. She filed the above-referenced Complaint for "violation(s) that occurred under the Fair Labor Standard Act". Appendix, page 33;

    b. The protected activity that she had engaged in was – according to the Complaint that she filed with the Wage and Hour Division of the U.S. Department of Labor – related to lactation. Appendix, pages 33-34.; and

    c. The protected activity that she had engaged in was – according to this Complaint – the expressing of milk for her newborn child. Appendix, page 34.

12. The above-referenced dispute was amicably resolved and settled back in August 2015, as evidenced by a signed, written Settlement Agreement that was entered into by and between the Secretary of Labor, United States Department of Labor, Arbor E&T ("Employer"), and Shaunice Pattillo ("Complainant"). Appendix, pages 13-15. Under the terms of this Settlement Agreement Arbor E&T agreed (without admitting that it had violated any provision of the Fair Labor Standards Act) to pay Pattillo $10,264.69 in back wages and $10,264.69 in liquidated damages. Appendix, pages 13-15. Arbor E&T also agreed to provide a neutral reference, "stating only Complainant's dates of employment, job title, and last wage rate." Appendix, page 13. Arbor E&T agreed to "refrain from any mention of Complainant's protected activity" and to refrain from "characterizing Complainant's separation as a termination". Appendix, page 13. In consideration for same, Pattillo,

as "Complainant", acknowledged that her acceptance of this Settlement Agreement constituted **"settlement in full of any and all claims against Employer arising out of Complainant's Complaint filed with the Wage and Hour Division** on October 16, 2014". Appendix, page 14. (emphasis added).

13. In response to written discovery requests served upon her in the case at bar, Plaintiff Pattillo has also admitted that:

    a. She executed the written Settlement Agreement that is discussed above. Appendix, page 34;

    b. She understood that she had "settled the FLSA claim" with Arbor E&T, LLC under the terms of this Settlement Agreement. Appendix, pages 34-35;

    c. She received all of the monies that Arbor E&T, LLC agreed to pay under the terms of this Settlement Agreement. Appendix, pages 35-36; and

    d. She has not tendered – or offered to tender – any of the monies that she received from Arbor E&T, LLC under the terms of this Settlement Agreement back to Arbor E&T, LLC, at any time. Appendix, page 36.

14. Almost three (3) years later Plaintiff Pattillo elected to file this lawsuit, complaining about the same *alleged* wrongful conduct that she complained about in the above-referenced Department of Labor dispute. Appendix, pages 1-12.

### III.

### STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move for summary judgment, identifying each claim – or the part of each claim – on which summary judgment is sought. This Rule provides that the court shall grant summary judgment if the movant (Arbor E&T herein) shows that there is no genuine dispute as to any material fact and that it is entitled to

judgment as a matter of law.

The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zena Radio Corp.*, 475 U.S. 574, 587 (1986).

When the defendant moves for summary judgment on a plaintiff's claim, it may satisfy its summary judgment burden in one (1) of two (2) ways: (1) the defendant may submit summary judgment evidence that negates the existence of an essential element of the plaintiff's claim. *Lavespere v. Niagra Mach. & Tool Work, Inc.*, 910 F.2d 167, 168 (5th Cir. 1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); and/or (2) the defendant may show that there is no evidence to support an essential element of the plaintiff's claim. *Celotex Corp.*, 477 U.S. at 325. Once the Defendant makes the required showing, the burden shifts to the plaintiff to show that there is a genuine dispute of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A plaintiff may defeat a Motion for Summary Judgment only if he shows that there are issues that are genuinely in dispute and advances convincing theories supporting their materiality. *Id* at 247-48.

## IV.

### ARGUMENTS AND AUTHORITIES

**A. All of Plaintiff's Affirmative Claims for Relief Fail, as a Matter of Law, Under the Doctrine of Accord and Satisfaction**

The affirmative defense of accord and satisfaction rests on a new contract in which the parties agree to discharge an existing obligation. *Williams v. Colthurst*, 253 S.W.3d 353, 359 (Tex. App. – Eastland 2008, no pet.); *TransAmerican Nat. Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 595 (Tex. App. – San Antonio 1996, writ denied); *Hirston v. SMU*, 441 S.W.3d 327, 336 (Tex. App. – Dallas 2013, pet. denied). The "accord" is the new contract that discharges an existing obligation. *Honeycutt v. Billingsly*, 992 S.W.2d 570, 576-77 (Tex. App. – Houston [1st Dist.] 1999, pet. denied).

The "satisfaction" is the performance of that new contract. *Baeza v. Hector's Tire & Wrecker Serv.*, 471 S.W.3d 585, 592 (Tex. App. – El Paso 2015, no pet.).

To prove accord and satisfaction, Arbor E&T must establish that it and Pattillo had a legitimate dispute, that they specifically and intentionally agreed to discharge the obligation, that the amount paid by Arbor E&T to the Plaintiff was in full satisfaction of her claim, that the parties had a meeting of the minds, that there was an unmistakable communication to the Plaintiff that Arbor E&T's performance was to constitute satisfaction of the underlying obligation, that this condition was plain, definite, and certain, that the Settlement Agreement and Arbor E&T's performance under it was clear, full, explicit, and not susceptible to any other (reasonable) interpretation, and that the Plaintiff understood -- or should have understood – all of the above. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 577 (Tex. 1969).

The written Settlement Agreement that Plaintiff Pattillo executed back in 2015 in the above-referenced Department of Labor dispute conclusively satisfies all of these elements. This Agreement references the "dispute" that was addressed in that matter (assigned matter no 2015-167-16663), detailed payment and other obligations that were imposed upon Arbor E&T, which was defined to constitute "settlement in full of any and all claims against Employer arising out of Claimant's complaint filed with the Wage and Hour Division on October 16, 2014" and is plain, definite, and certain. Appendix, page 14. The content of this Settlement Agreement is not susceptible to any other (reasonable) interpretation. There is nothing ambiguous about this Settlement Agreement, and Pattillo's signature on this Settlement Agreement – and her subsequent acceptance of the settlement proceeds – demonstrate that Pattillo understood – or should have understood – all of the above.

**B.     All of the Plaintiff's Affirmative Claims for Relief also Fail Under the Doctrine of Release**

A release is a complete bar to a later action based on matters covered in the release. *Chomburg v. TRW Vehicle Safety Sys., Inc.*, 242 S.W.3d 911, 913 (Tex. App. – Dallas 2008, pet. denied). The scope of any release is determined in the same way that other contracts are determined. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). Specifically, courts ascertain and give effect to the party's intentions as expressed in the document. *Frost Nat'l Bank v. L&F Distributors, Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (per curiam).

To release a claim effectively, the releasing instrument need only "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). Any claims "clearly within the subject matter" of the rlease are discharged. *Id.* It is not necessary, however, for the parties to anticipate and explicitly identify every existing or potential cause of action relating to the subject matter of the release. *Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000). Releases generally contemplate claims existing at the time of an execution, and a valid release may also encompass unknown claims and damages that develop in the future. *Id.*

Pattillo agreed to settle and release "any and all claims" against Arbor E&T "arising out of Complainant's Complaint filed with the Wage and Hour Division on October 16, 2014." Appendix, page ___. Such language is extremely broad, and encompasses the claims Plaintiff is now attempting to prosecute in the case at bar. Manifestly, phrases such as "arising out of" are not ambiguous, and clearly express the parties' intent. *See, e.g., Waffle House, Inc. v. Travelers Indem. Co. of Ill.*, 114 S.W.3d 601, 607 (Tex. App. – Fort Worth 2003 pet. denied). Indeed, a phrase like "arising out of" requires only "a causal connection or relation," which has been interpreted as something less than "direct or proximate causation." *Utica National Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citations omitted). That is, the phrase "arising out of" as used in a

release means that a claim "need only bear an incidental relationship to the described conduct" to be fully released. *Scottsdale Ins. Co. v. Texas Sec. Concepts & Investigation*, 173 F.3d 941, 943 (5th Cir. 1999). Likewise, the phrase "any and all claims" is unambiguously broad and all-encompassing. A broad-form release of claims like Pattillo's is allowed by law and fully enforceable. *See Keck, Mahin & Cate*, 20 S.W.3d at 698 (upholding a release covering "all demands, claims or causes of action of any kind whatsoever").

When this Court considers the Settlement Agreement that Pattillo entered into back in 2015 in its entirety and attempts to harmonize and give effect to all of the provisions contained in it the Court will clearly see that at the time that Pattillo executed this Settlement Agreement she expressly agreed to settle the dispute referenced in it in full with respect to any and all claims that she had filed against Arbor E&T arising out of the complaint that she filed with the Wage and Hour Division, and that those claims specifically related to Arbor E&T's *alleged* "constructive discharge" of Pattillo for "engaging in activity protected" by the FLSA. Appendix, page 14.

**C.    Additionally and/or Alternatively, All of the Plaintiff's Affirmative Claims for Relief are Barred by Waiver, as a Matter of Law**

Waiver is an affirmative defense that Arbor E&T has specifically pled. It is defined as the intentional relinquishment of a known right, and is either made expressly or indicated by conduct that is inconsistent with an intent to claim the right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). The Plaintiff's intent is the primary factor in determining waiver. *Stowers v. Harper*, 376 S.W.2d 34, 40 (Tex. App. – Tyler 1964, writ ref'd n.r.e.).

While, admittedly, a waiver is normally a question of fact, such is not the case herein. Plaintiff's intent – as evidenced by the Settlement Agreement – was clear: The Plaintiff agreed to accept the total sum of $20,529.38 in exchange for "settlement in full of any and all claims" against Arbor E&T "arising out of Complainant's Complaint filed with the Wage and Hour Division on

October 16, 2014." Appendix, page 14. By executing this Settlement Agreement – and accepting the monies referenced in it (that the Plaintiff admits receiving from Arbor E&T), the Plaintiff knowingly waived her right to pursue future claims against Arbor E&T arising out of her previously-filed Complaint – which (as discussed on page 8) is related to lactation/the expressing of milk for her newborn child. Appendix, pages 13-15. Accordingly, Plaintiff's affirmative claims for relief are barred by waiver, as a matter of law, and should be dismissed at this time.

WHEREFORE, PREMISES CONSIDERED, Defendant Arbor E&T, LLC respectfully prays that this Brief be received and filed and, upon consideration, that its Motion for Summary Judgment be granted in its entirety.