UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAUNICE PATTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-1194-B |
| | § | |
| ARBOR E&T, LLC, d/b/a RESCARE | § | |
| WORKFORCE SERVICES, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Arbor E&T, LLC's Motion for Summary Judgment (Doc. 19) on all of Plaintiff's claims. Because—as outlined below—the Court finds that a genuine issue of material fact exists as to whether the parties intended that a previous settlement agreement covered these claims, the Court **DENIES** Arbor's Motion for Summary Judgment.

## I.

## BACKGROUND

Plaintiff invokes this Court's federal question and supplemental jurisdiction based on her alleged Title VII and state-law claims. Doc. 1, Compl., ¶¶ 3, 25–45 (alleging retaliation, hostile work environment, constructive discharge, cat's paw liability, and wrongful discharge[1]). Plaintiff worked for Arbor as a Talent Development Specialist from May 2012 through November 2014, during which

---

[1] The Court notes that although Plaintiff states that she is alleging both Title VII and state-law claims, the state-law claims are not specifically identified, and all counts have the potential to be viable under Title VII. *See id.* The parties do not belabor this point, and given the findings of the Court, an exact distinction here is not necessary.

-1-

time the alleged discrimination and retaliation took place. *Id.* ¶¶ 2, 9. Specifically, she alleges that Arbor and its employees discriminated against her "because she was a woman who had recently given birth and exercised her rights under the Fair Labor Standards Act related to lactation," as well as engaged in other protected activities. *Id.* ¶¶ 2, 43. The majority of the alleged discrimination took place in the later half of 2014, after Plaintiff returned from her Family Medical Leave Act (FMLA) leave in September. *See id.* ¶¶ 11–23.

In response to this perceived discrimination, Plaintiff lodged complaints with the both the Department of Labor–Wage and Hour Division (DOL–WHD) and the Equal Employment Opportunity Commission (EEOC). Plaintiff filed her charge with the DOL–WHD on or about October 16, 2014. Doc. 23, Pl.'s Resp. App'x, 1 (Pl.'s Decl., ¶ 3). While the DOL–WHD investigation was pending, Plaintiff filed her charge with the EEOC on January 20, 2015. *Id.* at 2 (Pl.'s Decl., ¶ 4).

On September 4, 2015, the parties entered into a settlement agreement facilitated by the DOL–WHD.[2] *Id.* at 6. Plaintiff signed both the settlement agreement and a form acknowledging receipt of the settlement monies (DOL Form WH-58, the "receipt form") on that date. *Id.* at 4–6. Both documents described the claims that Plaintiff was settling. The Settlement Agreement itself stated:

> Complainant agrees that acceptance of this Agreement constitutes *settlement in full of any and all claims against Employer arising out of Complainant's complaint filed with the Wage and Hour Division* on October 16, 2014 and will result in closure of the investigation.

---

[2] The Court notes that the signatures from Arbor and the DOL–WHD are dated August 25, 2015, but the final signature, by Plaintiff, is dated September 4, 2015.

Doc. 23, Pl.'s Resp. App'x, 6 (emphasis added). Meanwhile, the receipt form contained more narrow language—that in exchange for back wages and liquidated damages, Plaintiff gave up her right to bring suit under Section 16(b) of the FLSA or Section 107 of the FMLA:

> Notice to Employee: Your acceptance of this payment of wages and/or other compensation due under the Fair Labor Standards Act (FLSA) or Family Medical Leave Act (FMLA), based on the findings of the [DOL–WHD] means that *you have given up the right you have to bring suit* on your own behalf for the payment of such unpaid minimum wages or unpaid overtime compensation for the period of time [April 6, 2013 to April 4, 2015] and an equal amount in liquidated damages, plus attorney's fees and court costs *under Section 16(b) of the FLSA or Section 107 of the FMLA*. Generally, a suit for unpaid wages or other compensation, including liquidated damages, must be filed within two years of a violation of the FLSA or FMLA. Do not sign this receipt unless you have actually received this payment in the amount indicated above.

*Id.* at 4 (emphasis added). Although both Plaintiff and Arbor were aware of Plaintiff's still-pending EEOC charge, neither the settlement agreement nor the receipt form acknowledged that outstanding investigation. *See id.* at 2 ¶ 5; 4–6.

Indeed it was not until two years after the DOL–WHD agreement was reached that the EEOC terminated its processing of Plaintiff's charge and Plaintiff received her Notice of Right to Sue on her Title VII claims. Doc. 23, Pl.'s Resp. App'x, 9. She filed her claims in this Court within the requisite 90-day window, on May 10, 2018. *See* Doc. 1, Compl.

Arbor then filed a Motion for Summary Judgment on October 9, 2018 with brief and appendix in support (Docs. 19, 20 & 21). Instead of addressing the elements of Plaintiff's claims directly, Arbor moved for summary judgment on the affirmative defenses of accord and satisfaction, release, and waiver, citing predominately Texas law. Doc. 20, Def.'s Br. Summ. J., 10–14. Plaintiff responded that whether a Title VII release was properly obtained is actually a matter of federal, not

state law, and the prior settlement agreement did not waive her Title VII claims because, *inter alia*, (1) the DOL did not have jurisdiction over Title VII claims and therefore could not have intended for her to have waived these claims; (2) a waiver of her Title VII claims would be impermissibly "prospective"; (3) the receipt form limited the waiver of her claims to the FLSA and FMLA; (4) and neither signed document mentioned Title VII. Doc. 22, Pl.'s Resp., 10–12. She too attached an appendix (Doc. 23).

Arbor replied with federal caselaw to support its arguments on release and waiver: that Title VII need not be explicitly mentioned in a settlement agreement for Plaintiff's waiver of such claims to be valid. Doc. 24, Def.'s Reply, 2. While Arbor admits that the totality of the circumstances must be considered, Arbor objects to the use of certain portions of Plaintiff's Declaration, in which she describes her understanding of the settlement, and which was attached as evidence to Plaintiff's Response. *Id.* at 2–3. But Arbor does not rebut Plaintiff's arguments that the receipt form's language is relevant in interpreting the settlement agreement. *See id.*

As the issues are now fully briefed, the Court now addresses Arbor's Motion.

## II.

## LEGAL STANDARD

Summary judgment is appropriate where the pleadings and record evidence show no genuine issue of material fact exists and that the movant is entitled to summary judgment as a matter of law. Fed R. Civ. P. 56(a); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "A fact is material

only if its resolution would affect the outcome of the action, and an issue is genuine only if the evidence is sufficient for a reasonable jury to return a verdict for the nonmovant." *Johnson v. Nationstar Mortgage, LLC*, 2017 WL 1196214, at *2 (S.D. Tex. Mar. 31, 2017) (quoting *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal quotations and alterations omitted).

The movant bears the initial burden of showing no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Once the movant has met its burden, the nonmovant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The court will not make credibility determinations, weigh the evidence, or draw inferences, but instead confine its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255. In determining whether a genuine issue exists for trial, the court will view all of the evidence in the light most favorable to the non-movant. *Matsushita*, 475 U.S. at 587.

**III.**

**ANALYSIS**

As an initial matter, the Court finds Arbor's Objections (Doc. 25) to Plaintiff's Declaration to be moot, as the Court does not rely on this evidence in reaching its conclusion. No other

objections were made by either party, thus the Court applies the Rule 56 analysis to the remainder of the evidence.

As for the substance of Arbor's Motion, Arbor's affirmative defenses of accord and satisfaction, waiver, and release are interrelated and not mutually exclusive, thus the Court addresses them together. *See* 1 AM. JUR. 2D *Accord and Satisfaction* § 3 (2019) ("Although release and accord and satisfaction are distinct defenses, an agreement may constitute both a release and an accord and satisfaction, either of which may bar future claims.").

A.   *Release and Waiver*

The Fifth Circuit has held that "[t]he interpretation and validity of a release of claims under Title VII is governed by federal law." *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002). This Circuit has used the terms waiver and release interchangeably in the Title VII context. *See id.* For waiver and release, Arbor must show that waiver was a "knowing and voluntary" act, as determined by a "totality of the circumstances." *See id.* "In determining whether a release was knowingly and voluntarily executed, federal law requires that a valid waiver is not to be 'lightly inferred.'" *Rogers v. Gen. Elec. Co.*, 781 F.2d 452, 455 (5th Cir. 1986) (quoting *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172 (5th Cir. 1976)). First, "[t]he employer bears the burden of establishing that its former employee 'signed a release that addresses the claims at issue, received adequate consideration, and breached the release.'" *Smith*, 298 F.3d at 441 (quoting *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994)). Then the burden shifts to the employee to "demonstrat[e] that the release was invalid because of fraud, duress, material mistake, or some other defense." *Id.* (alteration

in original) (quoting *Williams*, 23 F.3d at 935). "To determine whether the former employee has met the burden of establishing a defense to the validity of the release," courts consider:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of [the] plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* (alterations in original) (quoting *O'Hare v. Global Nat. Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990)).

Plaintiff argues that Arbor has not met its initial burden that Plaintiff "'signed a release that addresses the claims at issue, received adequate consideration, and breached the release.'" *Id.* (quoting *Williams*, 23 F.3d at 935). She specifically disputes whether the release addressed her Title VII claims, which were not explicitly mentioned in either document. The Court notes, however, that multiple circuit courts—including the Fifth Circuit—have held that "[t]here is no obligation . . . under Title VII or federal common law, that a release must specify Title VII or federal causes of action to constitute a valid release of a Title VII claim." *Id.* at 443 (collecting cases). In *Smith*, for example, the Fifth Circuit upheld the trial court's holding that the sentence in the release—"You agree to release [Employer] of any and all employment related claims."—unambiguously covered the plaintiff's Title VII claim. *Id.* at 441–42. Agreeing that the employer had met its initial burden, the Circuit then reviewed the *O'Hare* factors and agreed that the former employee had not met her burden to establish a defense to the validity of the release. *Id.* at 443–44.

Here, Plaintiff does not address the *O'Hare* factors. Thus, for Plaintiff to survive summary judgment, the Court must find that Arbor has failed in its burden to show that the release addressed

the claims at issue, Plaintiff received adequate consideration, and Plaintiff breached the release. For the reasons that follow, the Court finds that Arbor has failed to show the release covered her Title VII claims.

Here, Plaintiff signed two documents on the same day: a settlement agreement and a receipt form. The Court first considers the settlement agreement. The settlement agreement's release, read as a whole, states: "Complainant agrees that acceptance of this Agreement constitutes settlement in full of *any and all claims* against Employer *arising out of Complainant's complaint filed with the Wage and Hour Division*[.]" Doc. 23, Pl.'s Resp. App'x, 6 (emphasis added). Arbor argues that "arising out of" is broad language and encompasses the claims Plaintiff now brings. Doc. 20, Def.'s Br. Summ. J., 12–13 (citing, *inter alia*, *Utica Nat. Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)). But even *Utica* states that "arising out of" requires but-for causation.[3] *Utica*, 141 S.W.3d at 203. And although Plaintiff's Title VII claim would not exist but for her *employment* with Arbor, but-for causation does not exist between Plaintiff's Title VII claims and her *complaint* with the Wage and Hour Division. *See Smith*, 298 F.3d at 441–42 (holding a release of "any and all employment related claims" covered Title VII claims). Instead the release would only apply to claims that the Wage and Hour Division directly oversees—not Plaintiff's Title VII claims, or state-law claims.

Even if the agreement was subject to more than one interpretation and thus ambiguous, the Court could look to the receipt form to determine the scope of the release. Indeed Plaintiff suggests

---

[3] Although the interpretation of a Title VII release is governed by federal law, in an unpublished case the Fifth Circuit applied Texas rules of construction to an FLSA release. *See Johnson v. Manpower Prof'l Servs., Inc.*, 442 F. App'x 977, 983 (5th Cir. 2011). But even federal courts interpreting federal law look to state law in defining "arising out of." *See, e.g., Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 942–44 (5th Cir. 1999) (compiling cases that include state-law claims). Thus the Court finds Texas law persuasive.

this. Doc. 22, Pl.'s Resp., 11–12. While Arbor does not explicitly object to—or for that matter, address—the use of the receipt form as an aid to interpretation of the settlement agreement, the Court first considers whether the parol evidence rule might bar its consideration.[4] "When parties have concluded a valid integrated agreement with respect to a particular subject matter, the rule precludes the enforcement of inconsistent prior or contemporaneous agreements." *See F.D.I.C. v. Wallace*, 975 F.2d 227, 229 (5th Cir. 1992) (quoting *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 32 (Tex. 1958)).

First, the settlement agreement did not include a recital that it contained the entire agreement of the parties, nor a similarly worded merger provision. *See* Doc. 23, Pl.'s Resp. App'x, 5–6. While the absence of such a clause is not dispositive, the parol evidence rule is particularly applicable when such clause is included. *Smith v. Smith*, 794 S.W.2d 823, 827 (Tex. App.—Dallas, 1990). Second, the parol evidence rule does not apply to a document that is "fairly susceptible of more than one legal meaning[.]" *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 732 (Tex. 1981) (quoting *Lewis v. East Tex. Fin. Co.*, 146 S.W.2d 977, 980 (Tex. 1941)). Finally, logic suggests that the receipt form was mostly likely signed *after* the settlement agreement, therefore the parol evidence rule—which bars only prior or contemporaneous agreements—would not preclude the Court from

---

[4] Again, while a non-binding Fifth Circuit case considered Texas law in the interpretation of an employment release, the general rule is that federal law applies. Indeed, when addressing the issue of the parol evidence rule's applicability to an Age Discrimination in Employment Act release, a sister district court convincingly argued that unless the statute particularly incorporates the rule, "neither state nor federal parol evidence rules prevent courts from considering extrinsic evidence" "when considering the validity of waivers of federal employment law claims." *Sims v. Hous. Auth. of City of El Paso*, 2011 WL 3862256, at *3–4 (W.D. Tex. Aug. 31, 2011) (reviewing case law across the country for guidance). But out of an abundance of caution, the Court considers the parol evidence rule.

considering the form. This is also the interpretation that views the facts in the light most favorable to the non-movant, as is required at summary judgment.

And the receipt form only confirms this Court's interpretation of the agreement. It explicitly identifies only Plaintiff's FLSA or FMLA claims as being waived: "you have given up the right you have to bring suit . . . under Section 16(b) of the FLSA or Section 107 of the FMLA." Doc. 23, Pl.'s Resp. App'x, 4. Thus, there is at least a fact issue as to whether Plaintiff waived her current claims by signing the settlement agreement.

In addition, both parties knew the DOL-WHD has jurisdiction over FLSA claims, while the EEOC reviews Title VII claims.[5] Both parties also knew that Plaintiff had contemporaneously filed a complaint with the EEOC, which was to conduct its own investigation under separate laws. She was not required to retract her EEOC complaint as part of the DOL–WHD dispute resolution. And this is not a situation in which the relief she could recover under Title VII would be identical to that under the FLSA—under the settlement she received back wages and liquidated damages, but under Title VII she could also be eligible to receive compensatory damages and front pay. *See Zamora v. City of Houston*, 798 F.3d 326, 338 (5th Cir. 2015) (upholding the jury's award on past compensatory damages in a Title VII case based on evidence of mental anguish and past reputational harm and remanding for the district court reconsider the award for damages based on future reputational

---

[5] To be clear, in referring to the departments' jurisdictions, the Court is not opining on whether the DOL-WHD could or could not oversee a release of claims beyond the FLSA or FMLA. Such a holding is not necessary to the decision here. Instead, the Court simply holds that the language in the release Plaintiff signed is insufficient to bar her current claims at the summary-judgement stage.

harm); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44–45 (5th Cir. 1992) (affirming an award of front pay under Title VII).

As for the amount of compensation being an indicator that the parties intended that Plaintiff release *all* claims, including Title VII, Arbor provides no information—such as Plaintiff's strength of Title VII claims, or Arbor's potential liability—on which this Court can accurately assess that variable. *See, e.g.*, Doc. 20, Def.'s Br. Summ. J., ¶ 12; Doc. 24, Def.'s Reply, ¶ 5.

Given the evidence before the Court, and looking at the totality of the circumstances, the Court finds that Arbor has not met its initial burden. Waivers must be signed with full knowledge of the bargain being struck, and here, the Court is unable to conclude that Plaintiff understood that the waiver encompassed more than just her FLSA claims. *See Cox v. Allied Chem. Corp.*, 538 F.2d 1094, 1098 n.5 (5th Cir. 1976). The plain language of the receipt form, which Plaintiff signed the same day as the agreement, had Plaintiff releasing only her FLSA claims. And the settlement agreement released claims arising out of her complaint with the department assigned to review FLSA claims. Therefore, the Court concludes that there is at least a fact issue as to whether the release covered Plaintiff's current claims, and so cannot grant summary judgment against Plaintiff on these grounds.

B.   *Accord and Satisfaction*

As for accord and satisfaction's applicability to Title VII, even though it is a common law defense, it "has been used in other instances where federal law also controls disputes and claims." *See AXA S.A. v. Union Pacific R. Co.*, 269 F. Supp. 2d 863, 865–66 (S.D. Tex. 2003) (considering the defense in the context of a Carmack Amendment claim). And as Arbor correctly describes it, for

accord and satisfaction Arbor must establish that the parties specifically and intentionally agreed to settle the Title VII claims, and that the settlement was clear, full, explicit, and not susceptible to any other interpretation. Doc. 20, Def.'s Br. Summ. J., 11 (citing *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454 (Tex. 1969)). In other words, "[t]he minds must meet and where resting in implication the facts proved must irresistibly point to such conclusion." *Jenkins*, 449 S.W.2d at 455.

For similar reasons as those discussed above, the Court cannot conclude that Arbor has met its burden to show accord and satisfaction. The settlement agreement is susceptible to an interpretation that only FLSA claims were released. Reading the settlement agreement in context with the receipt form, it appears that Plaintiff, if not Arbor as well, only intended her FLSA claims be released. Thus, the facts in this case do not "irresistibly point" to the conclusion that Plaintiff already settled her current claims.

### IV.

### CONCLUSION

For the aforementioned reasons, the Court holds that a genuine issue of material fact exists as to whether Plaintiff released her current claims, either through waiver or accord and satisfaction. As such, the Court hereby **DENIES** Arbor's Motion for Summary Judgment (Doc. 19).

**SO ORDERED.**

**SIGNED: April 3, 2019.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE